Michael A. Faillace, Esq.                Helen F. Dalton, Esq.
Michael Faillace & Associates PC.        Helen F. Dalton & Associates, P.C.
60 East 42nd Street Suite 2540           69-12 Austin Street
New York, New York 10165                 Forest Hills, NY 11375
Telephone: (212) 317-1200                Telephone: (718) 263-9591
*Attorneys for Plaintiffs*                 *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DSISTRICT OF NEW YORK**

| | |
|---|---|
| ARTURO DANIEL MIRANDA, ALFONSO VERA RODAS, MIGUEL GARCIA, and DANIEL GRANDE NETZAHUATL, *individually and on behalf of all others similarly situated*, <br><br> *Plaintiffs*, <br><br> -against- <br><br> GRACE FARMS, INC. (d/b/a CITY CAFÉ), UNAK GROCERY CORP. (d/b/a LIBERTY CAFÉ), RAJNI SINGHAL, and VIVEK SINGHAL, *as individuals*, <br><br> *Defendants*. | Index No. 16-cv-1369 (VSB) (lead case) <br><br><br> **CONSOLIDATED COLLECTIVE ACTION COMPLAINT** <br><br><br> JURY TRIAL DEMANDED |
| AYDE MENA AMARO,ENRIQUE SANCHEZ VIELMA, IRVING RAMOS FRANCO, MIGUEL RIVERA, and PAULINO RAMALES BRAVO (A.K.A. PAUL ESTRADA)*,* <br><br> *Plaintiffs,* <br><br> -against- <br><br> UNAK GROCERY CORP. (d/b/a LIBERTY CAFÉ), LIBERTY FOOD & GROCERY CORP INC. (d/b/a LIBERTY CAFÉ), GRACE FARMS, INC. (d/b/a CITY CAFÉ), VIVEK SINGHAL, and RAJNI SINGHAL, <br><br> *Defendants.* | Index No. 16-cv-7704 (VSB) |

Plaintiffs, ARTURO DANIEL MIRANDA, ALFONSO VERA RODAS, MIGUEL GARCIA, and DANIEL GRANDE NETZAHUATL, AYDE MENA AMARO,ENRIQUE SANCHEZ VIELMA , IRVING RAMOS FRANCO, MIGUEL RIVERA and PAULINO RAMALES BRAVO (A.K.A. PAUL ESTRADA), individually and on behalf of all others similarly situated, (hereinafter referred to as "Plaintiffs"), by their attorneys at Helen F. Dalton & Associates, P.C. and Michael Faillace & Associates, P.C., allege as follows:

## **NATURE OF THE ACTION**

1. This is an action to recover minimum and overtime wages and liquidated damages, interest, costs, and attorneys' fees for violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and associated rules and regulations.

2. Plaintiffs are present and former employees of Defendants.

3. Defendants own, operate, and/or control two diners one of which is located at 37 W. 43rd Street, New York, New York 10036 hereinafter ("Liberty Cafe location") and the other at 35 W. 43rd Street, New York, New York 10036 hereinafter ("the City Cafe location").

4. Plaintiffs are/were employed as cashier, cook, food preparer and ostensibly employed as deliverymen.

5. However the delivery workers have been required to spend several hours of their work time each day performing non-tipped duties unrelated to deliveries, including prepping the fruit salad, cutting vegetables, making

and or prepping the lemonade, prepping the pudding, organizing all the sodas, cleaning the fridge, cleaning the soda machines, ordering all the supplies for the restaurant such as boxes of milk and Snapple inventory, stocking the yogurt in the fridge, cleaning the counters, sweeping and mopping the floor, cleaning the grill, bringing items from storage for the kitchen staff, dishwashing, taking out trash, folding and tying up cardboard boxes, sweeping and cleaning the sidewalk, purchasing cleaning supplies at the dollar store, and cleaning the bathroom (hereinafter the "non-delivery, non-tip duties").

6. Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they have worked.

7.  Rather, Defendants have failed to maintain accurate recordkeeping of their hours worked, and have failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8. Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have worked over 10 hours.

9. Defendants have employed and accounted for Plaintiffs Sanchez, Ramos and Rivera as deliverymen in their payroll, but in actuality their duties have required greater or equal time spent in non-delivery, non-tipped functions such as those alleged above.

10. Regardless, at all times Defendants have paid these Plaintiffs at a rate that is lower than the required tip-credit rate.

11. However, under state law Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties exceed 20% of each workday, or 2 hours per day (whichever were less in each day) (12 N.Y.C.R.R. §146).

12. Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying them at the minimum wage rate, and to enable them to pay them at the lower tip-credited rate (which they still have failed to do) by designating them as delivery workers instead of non-tipped employees.

13. At all times relevant to this complaint, Defendants have maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14. Plaintiffs now bring this action on behalf of themselves for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to the FLSA, 29 U.S.C. § 216(b), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367(a).

16. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiff Ayde Mena Amaro*

17. Plaintiff Mena is an adult individual residing in Queens County, New York. She was employed by Defendants from approximately September 2008 until on or about September 2, 2016.

18. During the course of her employment, Plaintiff Mena worked at Defendants' Liberty Cafe location.

### *Plaintiff Enrique Sanchez Vielma*

19. Plaintiff Sanchez is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately January 2010 until the present date.

20. During the course of his employment, Plaintiff Sanchez has worked at Defendants' Liberty Cafe and City Café locations.

### *Plaintiff Irving Ramos Franco*

21. Plaintiff Ramos is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately December 2010 until on or about April 2016.

22. During the course of his employment, Plaintiff Ramos worked at defendant's Liberty Cafe and City Café locations.

*Plaintiff Miguel Rivera*

23. Plaintiff Rivera is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately December 2012 until the present date.

24. During the course of his employment, Plaintiff Rivera has worked at defendants' Liberty Cafe and City Café locations.

*Plaintiff Paulino RAMALES BRAVO (a.k.a. Paul Estrada)*

25. Plaintiff Ramales is an adult individual residing in Passaic County, New Jersey. He has been employed by Defendants from approximately December 2012 until the present date.

26. During the course of his employment, Plaintiff Ramales has worked at defendants' City Cafe and Liberty Cafe locations.

*Plaintiff Arturo Daniel Miranda*

27. Plaintiff Miranda is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately 2001 until in or around April 2011, in or around October 2012 until in or around April 2013, and in or around February 2014 until in or around November 2015.

28. During the course of his employment, Plaintiff Miranda has worked at defendants' City Cafe and Liberty Cafe locations.

*Plaintiff Alfonso Vera Rodas*

29. Plaintiff Miranda is an adult individual residing in Queens County, New York. He has been employed by Defendants from in or around 2004 until in or around November 2011.

30. During the course of his employment, Plaintiff Miranda has worked at defendants' City Cafe and Liberty Cafe locations.

*Plaintiff Miguel Garcia*

31. Plaintiff Miranda is an adult individual residing in Kings County, New York. He has been employed by Defendants from in or around 2005 until in or around August 2010.

32. During the course of his employment, Plaintiff Miranda has worked at defendants' City Cafe and Liberty Cafe locations.

*Plaintiff Daniel Grande Netzahuatl*

33. Plaintiff Miranda is an adult individual residing in Queens County, New York. He has been employed by Defendants from in or around November 2010 until in or around August 2015.

34. During the course of his employment, Plaintiff Miranda has worked at defendants' City Cafe and Liberty Cafe locations.

*Defendants*

35. At all times relevant to this complaint, defendants own, operate, and/or control two diners one of which is located at 37 W. 43rd Street, New York,

New York 10036 under the name Liberty Café and the other one is located at 35 W. 43rd Street, New York, New York 10036, under the name City Cafe.

36. At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

37. Defendants constitute an enterprise within the meaning of FLSA, 29 U.S.C. § 203(r-s).

38. Upon information and belief, Unak Grocery Corp. (d/b/a Liberty Café) is a corporation organized and existing under the laws of the state of New York, and maintains its principal place of business at 37 W. 43rd Street, New York, New York 10036.

39. Upon information and belief, Liberty Food & Grocery Corp Inc. (d/b/a Liberty Café) is a corporation organized and existing under the laws of the state of New York, and maintains its principal place of business at 37 W. 43rd Street, New York, New York 10036.

40. Upon information and belief, Grace Farms, Inc. (d/b/a City Café) is a corporation organized and existing under the laws of the state of New York, and maintains its principal place of business at 35 W. 43rd Street, New York, New York 10036.

*Defendant Vivek Singhal*

41. Defendant Vivek Singhal is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

42. Defendant Vivek Singhal is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporations.

43. Upon information and belief, Defendant Vivek Singhal possesses or possessed operational control over each of Defendant Corporations possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations.

44. Defendant Vivek Singhal has determined the wages and compensation of the Plaintiffs, and has established the schedules of the employees, has maintained employee records, and has had the authority to hire and fire employees.

*Defendant Rajni Singhal*

45. Defendant Rajni Singhal is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

46. Defendant Rajni Singhal is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporations.

47. Upon information and belief, Defendant Rajni Singhal possesses or possessed operational control over each of Defendant Corporations, possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations.

48. Defendant Rajni Singhal has determined the wages and compensation of the Plaintiffs, and has established the schedules of the employees, has

maintained employee records, and has had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

49. Defendants operate two diners under the names "Liberty Cafe" and "City Café," located in the midtown area of Manhattan.

50. Upon information and belief, individual Defendants Vivek Singhal and Rajni Singhal possess or possessed operational control over defendant Corporations, each possess or possessed an ownership interest in Defendant Corporations, and control or controlled significant functions of Defendant Corporations.

51. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

52. Each Defendant possesses or possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs.

53. Defendants jointly employed Plaintiffs, and are their employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

54. In the alternative, defendants constitute a single employer of Plaintiffs.

55. Upon information and belief, Individual Defendants Vivek Singhal and Rajni Singhal operate Defendant Corporations as either an alter ego of

themselves, and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by, among other things:

- failing to adhere to the corporate formalities necessary to operate defendant Corporations as separate and legally distinct entities;

- defectively forming or maintaining defendant Corporations, by among other things, failing to hold annual meetings or to maintain appropriate corporate records;

- transferring assets and debts freely as between all Defendants;

- operating defendant Corporations for their own benefit as the sole or majority shareholders;

- operating defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations or closely held controlled entities;

- intermingling assets and debts of their own with defendant Corporations;

- diminishing and/or transferring assets to protect their own interests; and

- other actions evincing a failure to adhere to the corporate form.

56. At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and NYLL.  Defendants have had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and have determined the rate and method of compensation in exchange for their services.

57. In each year from 2010 to the present date, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than

$500,000 (exclusive of excise taxes at the retail level that are separately stated).

58. In addition, upon information and belief, defendants and/or their enterprise have been directly engaged in interstate commerce. For example, numerous items that are used and sold daily at the diners, such as vegetables and beverages, are produced outside the state of New York.

*Individual Plaintiffs*

59. Plaintiffs are present and former employees of defendants and have been employed as cashier, food preparer, cook and ostensibly have been employed as delivery workers. However, the delivery workers also have been required to perform the non-delivery, non-tip duties described above.

*Plaintiff Arturo Daniel Miranda*

60. Plaintiff ARTURO DANIEL MIRANDA was employed by Defendants at CITY CAFÉ located at 35 W. 43rd Street, New York, New York 10036 and at LIBERTY CAFÉ located at 37 W. 43rd Street, New York, NY 10036 from in or around 2001 until in or around April 2011, in or around October 2012 until in or around April 2013, and in or around February 2014 until in or around November 2015.

61. During Plaintiff's ARTURO DANIEL MIRANDA employment by Defendants at CITY café and LIBERTY CAFÉ, Plaintiff's primary duties were as a grill worker, deli worker, and performing other miscellaneous tasks.

62. Plaintiff ARTURO DANIEL MIRANDA was paid by Defendants approximately $10 per hour from in or around 2009 until in or around 2013,

and approximately $12 per hour from in or around 2013 until in or around 2015.

63. Although Plaintiff ARTURO DANIEL MIRANDA worked approximately 57 (fifty seven) hours or more per week throughout his employment with Defendants, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

*Plaintiff Alfonso Vera Rodas*

64. Plaintiff ALFONSO VERA RODAS was employed by Defendants at CITY CAFÉ located at 35 W. 43rd Street, New York, New York 10036 and at LIBERTY CAFÉ located at 37 W. 43rd Street, New York, NY 10036 from in or around 2004 until in or around November 2011.

65. During Plaintiff's ALFONSO VERA RODAS employment by Defendants at CITY CAFÉ and LIBERTY CAFÉ, Plaintiff's primary duties were as a coffee maker, salad preparer, bagel maker, deli worker, cashier and performing other miscellaneous tasks.

66. Plaintiff ALFONSO VERA RODAS was paid by Defendants approximately $400 per week, which equates to approximately $10 per hour throughout his employment with the Defendants.

67. Although Plaintiff ALFONSO VERA RODAS worked approximately 52.5 (fifty-two and a half) hours or more per week during the period of his employment by Defendants from in or 2004 until in or around November 30, 2011, Defendants did not pay Plaintiff time and a half (1.5) for hours

worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

68. Furthermore, Plaintiff ALFONSO VERA RODAS worked approximately ten and a half (10.5) hours per day, five (5) days a week throughout his employment, and Defendants did not pay Plaintiff an extra hour at the legally prescribed minimum wage for each day worked over ten (10) hours, a blatant violation of the spread of hours provisions contained in the NYLL.

*Plaintiff Miguel Garcia*

69. Plaintiff MIGUEL GARCIA was employed by Defendants at CITY CAFÉ located at 35 W. 43rd Street, New York, New York 10036 and at LIBERTY CAFÉ located at 37 W. 43rd Street, New York, NY 10036 from in or around 2005 until in or around August 2010.

70. During Plaintiff's MIGUEL GARCIA employment by Defendants at CITY CAFÉ and LIBERTY CAFÉ, Plaintiff's primary duties were as a deli worker, cashier and performing other miscellaneous tasks.

71. Plaintiff MIGUEL GARCIA was paid by Defendants approximately $500 per week, which equates to approximately $12.50 per hour from in or around 2005 until in or around August 2010.

72. Although Plaintiff MIGUEL GARCIA worked approximately 67.5 (sixty-seven and a half) hours or more per week from in or around 2005 until in or around August 2010, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

73. Furthermore, Plaintiff MIGUEL GARCIA worked approximately thirteen and a half (13.5) hours per day, five (5) days a week at CITY CAFÉ and LIBERTY CAFÉ, and Defendants did not pay Plaintiff an extra hour at the legally prescribed minimum wage for each day worked over ten (10) hours, a blatant violation of the spread of hours provisions contained in the NYLL.

*Plaintiff Daniel Grande Netzahuatl*

74. Plaintiff DANIEL GRANDE NETZAHUATL was employed by Defendants at CITY CAFÉ located at 35 W. 43rd Street, New York, New York 10036 and at LIBERTY CAFÉ located at 37 W. 43rd Street, New York, NY 10036 from in or around November 2010 until in or around August 2015.

75. During Plaintiff's DANIEL GRANDE NETZAHUATL employment by Defendants at CITY CAFÉ and LIBERTY CAFÉ, Plaintiff's primary duties were as a sandwich maker, deli worker, grill worker and performing other miscellaneous tasks.

76. Plaintiff DANIEL GRANDE NETZAHUATL was paid by Defendants approximately $400 per week from in or around November 2010 until in or around December 2013, and approximately $500 per week from in or around January 2014 until in or around August 2015, which equates to approximately $10 per hour and $12.50 per hour respectively.

77. Although Plaintiff DANIEL GRANDE NETZAHUATL worked approximately 57.5 (fifty-seven and a half) hours or more per week from in or around November 2010 until in or around August 2015, Defendants did not pay

Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.

78. Furthermore, Plaintiff DANIEL GRANDE NETZAHUATL worked approximately eleven and a half (11.5) hours per day, five (5) days a week at CITY CAFÉ and LIBERTY CAFÉ, and Defendants did not pay Plaintiff an extra hour at the legally prescribed minimum wage for each day worked over ten (10) hours, a blatant violation of the spread of hours provisions contained in the NYLL.

79. Additionally, Plaintiff DANIEL GRANDE NETZAHUATL was not paid for three days of work in approximately August 2015.

80. Defendants also failed to pay for approximately 3-4 hours each week to Plaintiff DANIEL GRANDE NETZAHUATL from in or around 2010 until the end of his employment in or around August 2015.

*Plaintiff Ayde Mena Amaro*

81. Plaintiff Mena was employed by Defendants from approximately September 2008 until on or about September 2, 2016.

82. During the course of her employment, Plaintiff Mena worked at Defendants' Liberty Cafe location.

83. Plaintiff Mena was employed by Defendants as a cashier.

84. Plaintiff Mena regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York. Plaintiff Mena's work duties required neither discretion nor independent judgment.

85. Plaintiff Mena regularly worked in excess of 40 hours per week.

86. From approximately September 2010 until approximately June 2013, Plaintiff Mena worked from approximately 6:00 a.m. until on or about 3:00 p.m. three days a week and from approximately 6:00 a.m. until on or about 3:30 p.m. two days a week (typically 46 hours per week).

87. From approximately July 2013 until on or about September 2, 2016, Plaintiff Mena worked from approximately 5:30 a.m. until on or about 2:00 p.m. two days a week and from approximately 5:30 a.m. until on or about 2:30 p.m. three days a week (typically 43.5 hours per week).

88. Throughout her employment with Defendants, Plaintiff Mena was paid her wages in cash.

89. From approximately September 2010 until on or about June 2013, Plaintiff Mena was paid $9.00 per hour.

90. From approximately July 2013 until on or about September 2, 2016 Plaintiff Mena was paid $10.00 per hour.

91. Plaintiff Mena's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

92. For example, twice or three times a week, Defendants required Plaintiff Mena to continue working 30 minutes past her scheduled departure time and did not pay her any extra funds for the extra time they required her to work.

93. Defendants did not provide Plaintiff Mena with a statement of wages with each payment of wages, as required by NYLL 195(3).

94. Instead, defendants required Plaintiff Mena to sign a payroll document that was incomplete and inaccurate as to the hours she had worked, in order to get paid.

95. In addition, approximately every three months, defendants required her to sign an incomplete and inaccurate letter of satisfaction of employment which was not properly translated to her by a manager under the name of Mr. Torres.

96. No notification, either in the form of posted notices, or other means, was given to Plaintiff Mena regarding overtime and wages under the FLSA and NYLL.

97. Defendants did not give any notice to Plaintiff Mena, in English and in Spanish (Plaintiff Mena's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

98. Defendants required Plaintiff Mena to purchase "tools of the trade" with her own funds—including four pairs of shoes, 15 black shirts, 20 hats, and 10 black pants

*Plaintiff Enrique Sanchez Vielma*

99. Plaintiff Sanchez has been employed by Defendants from approximately January 2010 until the present date.

100.     During the course of his employment, Plaintiff Sanchez has worked at defendants' Liberty Cafe and City Café locations.

101.      Plaintiff Sanchez ostensibly has been employed by Defendants as a delivery worker. However, during his hours as a delivery worker, Plaintiff

Sanchez has spent over 20% of his work time each day performing the non-delivery duties described above.

102.     Plaintiff Sanchez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

103.     Plaintiff Sanchez's work duties have required neither discretion nor independent judgment.

104.     Plaintiff Sanchez regularly has worked in excess of 40 hours per week.

105.     From approximately September 2010 until on or about April 2012, Plaintiff Sanchez worked from approximately 6:00 a.m. until on or about 6:00 p.m. two days a week and from approximately 5:00 a.m. until on or about 6:00 p.m. three days a week (typically 63 hours per week).

106.     From approximately April 2012 until the present date, Plaintiff Sanchez has worked from approximately 7:00 a.m. until on or about 4:30 p.m. Mondays through Fridays (typically 46.5 hours per week).

107.     Throughout his employment with Defendants, Plaintiff Sanchez has been paid his wages in cash.

108.     From approximately September 2010 until on or about April 2012, defendants paid Plaintiff Sanchez a fixed salary of $375 per week.

109.     From approximately April 2012 until the present date, defendants have paid Plaintiff Sanchez a fixed salary of $360 per week.

110.     Plaintiff Sanchez's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

111.     For example, from approximately September 2010 until on or about April 2012, Defendants required Plaintiff Sanchez to start working one hour prior to his scheduled start time and did not pay him any extra funds for the extra time they required him to work.

112.     Although defendants allegedly have granted Plaintiff Sanchez a 30-minute meal break, they have required him to work during the break and eat while working.

113.     Plaintiff Sanchez has never been notified by defendants that his tips are being included as an offset for wages.

114.     Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Sanchez's wages.

115.     From approximately September 2010 until on or about December 2013, Plaintiff Sanchez was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

116.     Defendants have not provided Plaintiff Sanchez with a statement of wages with each payment of wages, as required by NYLL 195(3).

117.     Instead, defendants have required Plaintiff Sanchez to sign a payroll document that is incomplete and inaccurate as to the hours he has worked, in order to get paid.

118.     In addition, approximately every three months, defendants have required Plaintiff Sanchez to sign an incomplete and inaccurate letter of satisfaction of employment which has not been properly translated to him by a manager under the name of Mr. Torres.

119.     No notification, either in the form of posted notices, or other means, has been given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

120.     Defendants have not given any notice to Plaintiff Sanchez, in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

121.     Defendants have required Plaintiff Sanchez to purchase "tools of the trade" with his own funds—including 50 pairs of black shoes, 72 black t-shirts, 72 hats, and 72 black pants.

*Plaintiff Irving Ramos Franco*

122.     Plaintiff Ramos was employed by Defendants from approximately December 2010 until on or about April 2016.

123.     During the course of his employment, Plaintiff Ramos worked at defendants' Liberty Cafe and City Café locations.

124.      Plaintiff Ramos ostensibly was employed by Defendants as a delivery worker. However, Plaintiff Ramos spent over 20% of the work time each day performing the non-delivery duties described above.

125.     Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

126.     Plaintiff Ramos' work duties required neither discretion nor independent judgment.

127.     Plaintiff Ramos regularly worked in excess of 40 hours per week.

128.     From approximately December 2010 until on or about December 2013, Plaintiff Ramos worked from approximately 6:00 a.m. until on or about 6:15 p.m. Mondays through Fridays (typically 61.25 hours per week).

129.     From approximately December 2013 until on or about April 2016, Plaintiff Ramos worked from approximately 8:00 a.m. until on or about 6:30 p.m. Mondays through Fridays (typically 52.5 hours per week).

130.     Throughout his employment with Defendants, Plaintiff Ramos was paid his wages in cash.

131.     From approximately December 2010 until on or about December 2013, Plaintiff Ramos was paid a fixed salary of $180 per week.

132.     From approximately December 2013 until on or about April 2016 Plaintiff Ramos was paid a fixed salary of $200 per week.

133.     Plaintiff Ramos' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

134.     For example, from approximately December 2010 until on or about December 2013, Defendants required Plaintiff Ramos to continue working 15 minutes past his scheduled departure time regularly, and did not compensate him for the extra time they required him to work.

135.     Similarly, from approximately December 2013 until on or about April 2016, defendants required Plaintiff Ramos to continue working one and a half hours past his scheduled departure time every day and did not compensate him for the extra time they required him to work.

136.     Although defendants allegedly granted Plaintiff Ramos a 30-minute meal break, they required him to work during the break and eat while working.

137.     Plaintiff Ramos was never notified by defendants that his tips would be included as an offset for wages.

138.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos' wages.

139.     From approximately December 2010 until on or about December 2013, Plaintiff Ramos was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

140.     Defendants did not provide Plaintiff Ramos with a statement of wages with each payment of wages, as required by NYLL 195(3).

141.     Instead, defendants required Plaintiff Ramos to sign a payroll document that was incomplete and inaccurate as to the hours he worked, in order to get paid.

142.     In addition, approximately every three months, defendants required Plaintiff Ramos to sign an incomplete and inaccurate letter of satisfaction

of employment which was not properly translated to him by a manager under the name of Mr. Torres.

143.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Ramos regarding overtime and wages under the FLSA and NYLL.

144.     Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

145.     Defendants required Plaintiff Ramos to purchase "tools of the trade" with his own funds—including four bicycles, four black shirts, three hats, a helmet, $500 in bicycle maintenance and four black pants.

*Plaintiff Miguel Rivera*

146.     Plaintiff Rivera has been employed by Defendants from approximately December 2012 until the present date.

147.     During the course of his employment, Plaintiff Rivera has worked at defendants' Liberty Cafe and City Café locations.

148.      Plaintiff Rivera ostensibly has been employed by Defendants as a delivery worker.

149.     However, during his hours as a delivery worker, Plaintiff Rivera spends over 20% of the time he works each day performing the non-delivery duties described above.

150.    Plaintiff Rivera regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

151.    Plaintiff Rivera's work duties have required neither discretion nor independent judgment.

152.    Plaintiff Rivera regularly has worked in excess of 40 hours per week.

153.    From approximately December 2012 until on or about May 2014, Plaintiff Rivera worked from approximately 6:00 a.m. until on or about 4:00 p.m. Mondays through Fridays (typically 60 hours per week)

154.    From approximately June 2014 until the present date, Plaintiff Rivera has worked from approximately 5:00 a.m. until on or about 2:00 p.m., Mondays through Fridays (typically 45 hours per week).

155.    Throughout his employment with Defendants, Plaintiff Rivera has been paid his wages in cash.

156.    From approximately December 2012 until the present date, defendants have paid Plaintiff Rivera a fixed salary of $330 per week.

157.    Although defendants allegedly have granted Plaintiff Rivera a 30-minute meal break, they have required him to work during the break and eat while working.

158.    Plaintiff Rivera has never been notified by defendants that his tips are being included as an offset for wages.

159.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Rivera's wages.

160.     From approximately December 2012 until on or about December 2013, Plaintiff Rivera was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

161.     Defendants have not provided Plaintiff Rivera with a statement of wages with each payment of wages, as required by NYLL 195(3).

162.     Instead, defendants have required Plaintiff Rivera to sign a payroll document that is incomplete and inaccurate as to the hours he has worked, in order to get paid.

163.     In addition, approximately every three months, defendants have required Plaintiff Rivera to sign an incomplete and inaccurate letter of satisfaction of employment which has not been properly translated to him by a manager under the name of Mr. Torres.

164.     No notification, either in the form of posted notices, or other means, has been given to Plaintiff Rivera regarding overtime and wages under the FLSA and NYLL.

165.     Defendants have not given any notice to Plaintiff Rivera, in English and in Spanish (Plaintiff Rivera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Paulino RAMALES BRAVO (a.k.a. Paul Estrada)*

166.     Plaintiff Ramales has been employed by Defendants from approximately December 2012 until the present date.

167.     During the course of his employment, Plaintiff Ramales has worked at both the City Cafe and Liberty Cafe locations.

168.     Plaintiff Ramales has been employed by Defendants as a salad preparer, cook and counter attendant.

169.     Plaintiff Ramales regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

170.     Plaintiff Ramales' work duties have required neither discretion nor independent judgment.

171.     Plaintiff Ramales regularly has worked in excess of 40 hours per week.

172.     From approximately December 2012 until on or about December 2013, Plaintiff Ramales worked from approximately 4:30 a.m. until on or about 4:00 p.m. Mondays through Fridays (typically 57.5 hours per week).

173.     From approximately December 2013 until on or about  March 2015, Plaintiff Ramales worked from approximately 4:30 a.m. until on or about 2:00 p.m. Mondays through Fridays  (typically 47.5 hours per week).

174.     From approximately March 2015 until the present date, Plaintiff Ramales has worked from approximately 4:30 a.m. until on or about 3:30 p.m. Mondays through Fridays (typically 55 hours per week).

175.     Throughout his employment with Defendants, Plaintiff Ramales has been paid his wages in cash.

176.    From approximately December 2012 until on or about December 2013, defendants paid Plaintiff Ramales a fixed salary of $440 per week.

177.    From approximately December 2013 until on or about March 2015, defendants paid Plaintiff Ramales a fixed salary of $450 per week.

178.    From approximately March 2015 until the present date, defendants have paid Plaintiff Ramales a fixed salary of $460 per week.

179.    Plaintiff Ramales' pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

180.    For example, defendants have required Plaintiff Ramales to start working 15 to 30 minutes prior to his regular start time every day, and have not paid him any additional compensation for the extra time they have required him to work.

181.    Similarly, from approximately March 2015 until the present date, defendants have required Plaintiff Ramales to continue working 20 to 30 minutes past his scheduled departure time each day, and have not compensated him for the extra time they have required him to work.

182.    Although defendants allegedly have granted Plaintiff Ramales a 30-minute meal

183.    break, they have required him to work during the break and eat while working.

184.    From approximately December 2012 until on or about December 2013, Plaintiff

185. Ramales was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

186. Defendants have not provided Plaintiff Ramales with a statement of wages with each payment of wages, as required by NYLL 195(3).

187. Instead, defendants have required Plaintiff Ramales to sign a payroll document that is incomplete and inaccurate as to the hours he has worked, in order to get paid.

188. In addition, approximately every three months, defendants have required Plaintiff Ramales to sign an incomplete and inaccurate letter of satisfaction of employment which has not been properly translated to him by a manager under the name of Mr. Torres.

189. No notification, either in the form of posted notices, or other means, has been given to Plaintiff Ramales regarding overtime and wages under the FLSA and NYLL.

190. Defendants have not given any notice to Plaintiff Ramales, in English and in Spanish (Plaintiff Ramales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

191. Defendants have required Plaintiff Ramales to purchase "tools of the trade" with his own funds—including 8 pairs of black shoes, 50 black t-shirts, and 10 black pants.

*Defendants' General Employment Practices*

192.    At all times relevant to this complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours per week without paying them appropriate minimum wage, overtime, and spread of hours compensation, as required by federal and state laws.

193.    Defendants habitually have required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

194.    Defendants have required Plaintiffs Sanchez, Ramos and Rivera and similarly situated individuals to perform several non-delivery related tasks for over 20% of each work day, in addition to their primary role as deliverymen. These responsibilities included the non-tip non-delivery duties described above.

195.    These Plaintiffs have been employed ostensibly as deliverymen (tipped employees) by Defendants, although their actual duties have included much greater time spent in non-delivery, non-tipped functions.

196.    These Plaintiffs have been paid at a rate that is lower than the required  tip-credited rate by Defendants, when in fact, under state law Defendants are not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever were less) (12 N.Y.C.R.R. § 146.)

197.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day in which he has been

assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4.) Similarly, under federal regulations an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation. (29 C.F.R. §531.56(e).

198.      These Plaintiffs' duties are not incidental to their occupation as deliverymen, but instead constitute entirely unrelated occupations with duties such as those outlined above. While performing these duties, Plaintiffs do not receive tips; therefore, they constitute non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that such employees worked in these roles.

199.      In violation of applicable federal and state law, Defendants have classified these Plaintiffs as tipped employees and have not paid them at the tip-credited rate when they should have classified them as non-tipped employees and should have paid them at the minimum wage rate.

200.      Defendants' pay practices have resulted in Plaintiffs not receiving payment for all hours worked, resulting in their effective rate of pay falling below the required minimum and overtime wage rate.

201.      Plaintiffs have been victims of Defendants' common policy and practices violating rights under the FLSA and NYLL by inter alia not paying the minimum wage and overtime owed for the hours worked.

202.      As part of their regular business practice, Defendants intentionally, willfully, and repeatedly have harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

203.    At no time have Defendants inform tipped Plaintiffs that they have reduced their hourly wage by a tip allowance.

204.    Defendants have failed to inform tipped Plaintiffs that their tips are being credited towards the payment of the minimum wage.

205.    Plaintiffs have been paid their wages in cash.

206.    Prior to December 2013, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records. Defendants have required plaintiff to sign sheets with false payroll information in order to get their checks.

207.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for their full hours worked.

208.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

209.    Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs current and former delivery workers.

210.    Defendants have failed to post required wage and hour posters in the workplace

211.     Defendants also have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

212.     Defendants have failed to provide Plaintiffs with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

213.     Defendants have failed to provide Plaintiffs, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing

address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FIRST CAUSE OF ACTION
### (Violation of the Minimum Wage Provisions of the FLSA)

214.　　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

215.　　Defendants have failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

216.　　Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

217.　　Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the Overtime Provisions of the FLSA)

218.　　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

219.　　Defendants have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

220.　　Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

221.     Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Violation of the New York Minimum Wage Act)

222.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

223.     Defendants have paid Plaintiffs less than the minimum wage, in violation of NYLL § 652(1) and supporting regulations.

224.     Defendants' failure to pay Plaintiffs minimum wage is willful within the meaning of NYLL § 663.

225.     Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (Violation of the Overtime Provisions of the New York Labor Law)

226.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

227.     Defendants have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of NYLL Art. 19 and 12 N.Y.C.R.R. § 142-2.2.

228.     Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of NYLL § 663.

229.     Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
**(Violation of the Spread of Hours Wage Order of the New York**

**Commissioner of Labor)**

230.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

231.     Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 et seq. and 12 N.Y.C.R.R. §§ 137-1.6.

232.     Defendants' failure to pay Plaintiffs  an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

233.     Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Violation of the Notice and Recordkeeping Requirements of the New York Labor Law)**

234.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

235.     Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

236.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys fees.

## SEVENTH CAUSE OF ACTION
**(Violation of the Notice and Wage Statement Provisions of the New York Labor Law)**

237.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

238.    Defendants have not provided Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

239.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys fees.

## EIGHTH CAUSE OF ACTION
**(Recovery of Equipment Costs)**

240.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

241.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, black t-shirts and black pants further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

242.    Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

Declaring that defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' compensation, hours, wages, and any deductions or credits taken against wages;

Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs;

Awarding Plaintiffs  damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

Awarding Plaintiffs  liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, 29 U.S.C. § 216(b);

Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL;

Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL;

Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor;

Declaring that defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs ' compensation, hours, wages; and any deductions or credits taken against wages;

Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order are willful;

Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

Awarding Plaintiffs the expenses incurred in this action, including costs and attorneys' fees;

Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

demand a trial by jury on all issues triable by a jury.


Dated:  New York, New York
        January 27, 2017

                                    Michael Faillace & Associates,
                                    p.c.

                                    By:     /s/Michael Faillace
                                    Michael Faillace, Esq. (MF 8436)
                                    Michael Faillace & Associates,
                                    p.c.
                                    60 East 42nd Street, suite 2540
                                    New York, New York 10165
                                    Telephone: (212) 317-1200



                                    Helen F. Dalton, p.c.

                                    By:     /s/Helen F. Dalton
                                    Helen F. Dalton, Esq. (HD 3231)
                                    Helen F. Dalton & Associates,
                                    P.C.
                                    69-12 Austin Street
                                    Forest Hills, NY 11375
                                    Telephone: (718) 263-9591

                                    *Attorneys for Plaintiffs*